## In re 1775 BROADWAY CORPORATION.

### Appeal of NOYES et al.
### No. 501.

Circuit Court of Appeals, Second Circuit.
July 22, 1935.

Lawrence Berenson, of New York City, for debtor.

Walker & Redman, of New York City (George R. Walker and M. L. Willson,

both of New York City, of counsel), for committee.

White & Case, of New York City (Joseph M. Hartfield and J. Adam Murphy, both of New York City, of counsel), for appellant Manufacturers Trust Co. as trustee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

The debtor, the Manufacturers Trust Company, as trustee under a trust indenture, dated June 1, 1929, and a committee under a deposit agreement with noteholders dated February 20, 1931, appeal from an order resettling an order approving a plan of reorganization of the debtor. The plan was approved by 93 per cent. of the creditors of the debtor, by the debtor itself, and by the Manufacturers Trust Company, as trustee.

The 1775 Broadway building was erected upon a leasehold for a long term of years. There is on it a first mortgage lien of $4,764,500 and a second mortgage lien on which there is now due $1,892,000 and some arrears, and there was a third mortgage which has been foreclosed. The committee of noteholders have had deposited with them $1,279,000 principal amount of notes of the debtor out of an issue of $1,250,000. The Manufacturers Trust Company is trustee under an indenture. As such trustee it owns as pledged security 5,000 shares of the Manufacturers Trust Company stock and an equity in the leasehold through the stock of the Motor Realty Company. The Manufacturers Trust Company agreed with the committee to advance $228,000 to be used in the purchase of the second mortgage bonds at a price of $177,000 and in payment of the costs and expenses of the debtor's reorganization. The consideration for this agreement was that the noteholders release the Manufacturers Trust Company of all claims they might have against it. Claims are asserted against the Manufacturers Trust Company in tort for misrepresentations in selling the notes and also equitable rights of action for mismanagement of the trust res, one of which is the failure to sell the trustee's own stock when it began to decline in value in the year 1929.

In the plan of reorganization, provision is made that both kinds of claims be released. This provision was stricken out by the court below, but without prejudice to the noteholders' committee making a contract to release the trustee as to the deposited notes. The order of resettlement, however, forbade the committee to give any releases, and it is from this modification that the appeal is taken.

Section 77B (f) (1), Bankr. Act, 48 Stat. 912, 11 USCA § 207 (f) (1), provides that the judge, after hearing such objections as may be made to a plan, shall confirm the plan "if satisfied that (1) it is fair and equitable and does not discriminate unfairly in favor of any class of creditors or stockholders, and is feasible." The judge may not confirm the plan unless it is shown to be fair, and, in the instant case, because of the agreement as to releases, the plan was held to be unfair.

The deposit agreement granted broad powers to the committee. They had power and authority to prepare, approve, and adopt any plan for the protection of the deposited notes and for the readjustment of the rights, security, or situation of the holders or depositors and the readjustment or reorganization of the debtor. They were empowered to provide for the raising of cash which was deemed necessary. Each depositor was permitted, within 30 days after the first day of publication of notice of the adoption of a plan, to notify the committee in writing of his dissent from the plan, and, if the committee did not, within 10 days after the end of such 30-day period, give notice of election to abandon the plan, such depositor giving written notice of the dissent was entitled to withdraw, and all depositors "shall be conclusively and finally deemed for all purposes to have assented to said plan and the terms thereof, whether they received actual notice or not, and be irrevocably bound and concluded by the same," unless they gave notice of withdrawal. Provision was made for notice to noteholders by mail. The plan informed depositors with respect to the release to be given to the Manufacturers Trust Company. In a letter from the committee to each noteholder, they were advised of this provision of the plan. Some noteholders objected and withdrew.

However broad may be the powers of the committee under the deposit agreement, section 77B (b), Bankr. Act, 11 USCA § 207 (b), provides: "For all purposes of this section any creditor may act in person, by an attorney at law, or by a duly authorized

**110**

agent or committee: Provided, That the judge shall scrutinize and may disregard any limitations or provisions of any depositary agreements, trust indentures, committee or other authorizations affecting any creditor acting under this section and may enforce an accounting thereunder or restrain the exercise of any power which he finds to be unfair or not consistent with public policy. * * *" It was necessary for the court below to be satisfied that the plan contemplating releases of the claims against the trustee was fair. The court did not have jurisdiction of nonassenting noteholders to release tort claims against the seller of the notes. The court's control over the committee gave it power to forbid the committee to release such tort claims. Claims arising from misrepresentation in the sale of notes were not claims against the debtor or its assets nor claims that must be settled in order to bring property into the reorganized company. Indeed, the trustee could be compelled to transfer the property, leaving these claims undetermined and outstanding. While it is true that these claims were against the Manufacturers Trust Company in its personal capacity and were left out of the plan of reorganization, the court in its supervision had the power to reject that part of the plan which provides for releases. It could prohibit the committee from compromising claims of depositors having nothing to do with the property of the debtor. Section 77B (b) grants such authority.

The claims for mismanagement of the trust against the trustee the court might have ordered released after being satisfied that it was fair and just so to do and that sufficient consideration was paid therefor. A release of liability for mismanagement of the trust pertained to the trust res to be turned over in the reorganization. The determination as to releasing such liability was a duty cast upon the judge both in the interest of the debtor and of the noteholders. In reaching a determination, the court was obliged to appraise the possibility of success in prosecuting such claims and consider it in the light of the prospects of benefit to the noteholders under the plan of reorganization. To reach such a determination, the court might well have considered the need of taking proofs. As properly pointed out below, the court could not decide the question of fairness without inquiring into the facts over which it had no jurisdiction in the matter of the tort claims

for misrepresentation. Section 77B (f) contemplates that the judge must be satisfied with the fairness of the plan, and extends a broad discretion to be exercised, and he must not confirm a plan unless satisfied.

Under the facts here disclosed, the court was justified in refusing to confirm the plan.

Order affirmed.