## In re NATIONAL PUBLIC SERVICE CORPORATION. *

### No. 234.

Circuit Court of Appeals, Second Circuit.

Feb. 15, 1937.

MANTON, Circuit Judge, dissenting.

———◆———

Garrett A. Brownback, of New York City, for petitioning creditors-appellants.

John W. Montgomery, of New York City (Charles M. Travis and George M. LePine, both of New York City, of counsel), for debtor-appellant.

Milbank, Tweed, Hope & Webb, of New York City (Lawrence Bennett, of New York City, of counsel), for appellee Public Service Corporation of New Jersey.

*Writ of certiorari denied 57 S.Ct. 724, 81 L.Ed. ——.

Sage, Gray, Todd & Sims, of New York City (Melber Chambers and Charles M. Kritzman, both of New York City, of counsel), for appellee New York Trust Co.

Albert Hubschman and Harold Stern, both of New York City, for respondent-creditors deBerg, Luey, and McKinlay.

Wollman & Wollman and Robert G. Starr, all of New York City (Robert G. Starr and Aaron B. Coleman, both of New York City, of counsel), amici curiæ.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The debtor, National Public Service Corporation, is a public utility holding company. It issued $20,000,000 principal of debentures in 1928 and secured them under a trust indenture of which the New York Trust Company was trustee by stocks of various subsidiary corporations.

On July 8, 1932, National Public Service Corporation was adjudicated a bankrupt and the Irving Trust Company became trustee in bankruptcy. The unpledged assets were liquidated in the bankruptcy proceeding and the cash proceeds aggregating about $111,000 are in the hands of the trustee in bankruptcy.

The collateral for the debentures constituted all the remaining assets and consists of 712,411 shares of the common stock of Jersey Central Power & Light Company, a public utility operating company, which is slightly over 67 per cent. of all the stock of that company, and certain common stocks of two other holding companies which were sold by the New York Trust Company as trustee under the indenture for a small sum on August 27, 1936. The disposition of the 67 per cent. interest in the common stock of Jersey Central Power & Light Company is the subject of contention in the present litigation.

On December 19, 1935, after a valuation pursuant to section 57 (h) of the Bankruptcy Act (11 U.S.C.A. § 93(h), an order was entered by the referee in bankruptcy fixing the value of the collateral at $6,767,904.50, providing that the claims on the debentures upon which dividends are to be paid "be credited with the payment of, and reduced by," that amount "which credit and reduction shall be pro rated upon and with respect to all" secured claims in accordance with the amounts thereof and that "all claims and interest of the Bankrupt and its Trustee in and with respect to said collateral * * * be terminated by the Bankrupt and its Trustee." This order was made upon the petition of one Murray Kanner, a debenture holder acting on behalf of himself and other owners of debentures which asked for an appraisal of the collateral and prayed, among other things, for an adjudication of the rights of the trustee in bankruptcy therein, for an order directing the trustee to abandon any interest in the collateral in the event that the securities should be found to be of less value than the amount of the lien of the bondholders thereon and the claims filed on the bonds in the bankruptcy proceeding, and for other and further relief. No attempt was made by any person to review the order of December 19, 1935, which was made after a creditors' meeting held on December 5, 1935.

On or about July 30, 1936, the New York Trust Company, at the request of a "Protective Committee" for the debenture holders, formed in 1932, began to advertise the collateral for sale on September 10, 1936, having an offer therefor of $5,000,000, which was thereafter advanced to $8,000,000, from the Public Service Corporation of New Jersey, a holder of a large number of the debentures. On August 20, 1936, the three petitioners herein, two of which were subsidiaries of Associated Gas & Electric Company, holding $6,437,000 of the debentures, filed a petition under section 77B of the Bankruptcy Act (as amended, 11 U.S.C.A. § 207), and proposed a plan of reorganization. This plan involved the formation of a new corporation, and provided that all the unpledged stock of the Jersey Central Power & Light Company, now owned by interests of the Associated Gas & Electric Company, should be transferred to the new company, and that the pledged stock should be contributed thereto by the debenture holders in return for debentures of the new company to the extent of 60 per cent. of the par value of the holdings of the owners of the old debentures, and that the new debentures should be secured by the stock of the Jersey Central Power & Light Company now held as collateral by the New York Trust Company as trustee under the trust indenture.

The creditors who filed the petition in which the reorganization under section 77B was proposed applied for an order approv-

ing the petition. After a reference to and report by the referee as special master, Judge Mandelbaum filed an opinion in which he held that, as a result of the referee's order of December 19, 1935, "every legal right of this debtor in the Jersey Central stock was terminated, and the sole property right in that stock, free of all claims of the debtor, was vested in the debenture-holders through their trustee and the claim of these debenture-holders against the estate of the debtor was reduced by the value placed on the Jersey Central stock and was irrevocably fixed at the reduced amount." The judge added that: "the order of December 19th, 1935, has so completely divested the debtor-corporation of any proprietary interest in the collateral that there is nothing which can properly be the subject of reorganization," and made an order, on November 24, 1936, dismissing the petition for reorganization accordingly. From this order the present appeal is taken.

It is to be noticed that the cash realized by the trustee in bankruptcy is still in its hands for distribution in the original bankruptcy proceeding and that the proposed reorganization deals wholly with the collateral of which the debtor once had the legal title, subject to its pledge to the New York Trust Company as trustee for the debenture holders. If the result of the order of the referee of December 19, 1935, was to extinguish this title so far as the debtor is concerned, there remained no subject-matter for the reorganization which was proposed.

The question here is what effect to give to the order of December 19, 1935, "that all claim and interest of the Bankrupt and its Trustee in and with respect to said collateral hereinbefore mentioned be terminated and abandoned by the Bankrupt and its Trustee."

Counsel for the appellants do not seem to question that this appeal is concerned only with the interpretation of the foregoing order, for they say in their reply brief (page 10) that they do not contend that the order could not be effective to extinguish the bankrupt's equity of redemption because the bankrupt did not participate in the 57 (h) proceeding but only "that in view of the circumstances, the order should not be deemed self-executing as a transfer of the debtor's title or interest in the collateral to the debenture holders or their trustee."

As we have already said, the order was made upon a petition praying that the court fix the value of the securities held by the New York Trust Company, as trustee under the trust indenture, in accordance with section 57 (h) of the Bankruptcy Act (11 U.S.C.A. § 93 (h), deduct such value when determined from the secured claims "and/or adjudicate the rights, if any, of * * * Irving Trust Company, as Trustee in Bankruptcy of National Public Service Corporation therein, and/or direct the Irving Trust Company as Trustee to abandon any claim to or interest in the said securities and the administration thereof, in the event that such securities shall be found to be of lesser value than the amount of the lien of the bondholders on the said securities and of the claims filed on said bonds herein; and make such other orders, decrees and provisions in reference thereto as shall be just and equitable to all parties concerned, and that your petitioner have such other, further and different relief as to this court may seem just and equitable in the premises."

We cannot see how a finding by the referee that the "interest of the Bankrupt and its Trustee * * * is terminated and that all claim and title in or with respect thereto by the Bankrupt or its Trustee should be abandoned," and the succeeding order directing that "all claim and interest of the Bankrupt and its Trustee in and with respect to said collateral * * * be terminated and abandoned by the Bankrupt and its Trustee," could have had any other purpose than the vesting of all rights, which the trustee in bankruptcy represented both on behalf of the creditors and of the bankrupt, in the New York Trust Company as holder of the collateral to secure the bondholders.

It may be argued that there was no notice in the petition before the referee of any purpose to do more than abandon the trustee's interest and no warning that any resulting right of the bankrupt was to be transferred. The petition prayed for general relief. The trustee had title to the equity both on behalf of the creditors and the bankrupt. The appraisal indicated, and the proofs showed, that the bankrupt had no real interest in the collateral because it was of a value far less than the claim which it secured. No possible meaning can be attributed to the words "terminated and abandoned by the Bankrupt and its Trustee" except that of vesting a complete title in the pledgee effectuated by an order

of surrender. The proceeding was more than one to fix value under section 57 (h), for it was also to extinguish such ·rights in the collateral as belonged to the trustee in bankruptcy and to bring about a settlement between that trustee as representative both of the creditors and the bankrupt and the pledgee. The right to surrender pledged property to a lienholder in extinguishment pro tanto of his claim has generally been recognized in bankruptcy and to our knowledge has. never met with anything but judicial approval. In re Lausman (D.C.) 183 F. 647, 650; In re Rose (D.C.) 193 F. 815, 816; In re Menzies (D.C.) 60 F.(2d) 1064, 1067. It is an adjunct of the powers to sell and compromise and is unquestionably valid. The order of Referee Kurtz was made in connection with a creditors' meeting where the petition had asked for the abandonment of the collateral by the trustee and contained a prayer for general relief. To hold that such an order was made without jurisdiction and was a mere nullity would seem entirely without warrant. If any bondholders or unsecured creditors objected to the scope of the order on the ground that it exceeded the literal terms of the petition, they were not at liberty to disregard its provisions, for it was an order of a court plainly having jurisdiction, but should promptly have sought relief by appeal instead of waiting until the value of the collateral had risen beyond the value fixed by the referee and urging in a 77B proceeding that his order did not terminate the interest of the bankrupt as it said it did.

We are satisfied (1) that the referee had jurisdiction; (2) that his order made in the exercise of that jurisdiction terminated the interest of the bankrupt in the collateral in a proceeding that amounted to a strict foreclosure, and that for that reason the relations of the bankrupt and its creditors to the collateral cannot be the subject matter of a reorganization in a 77B proceeding. Neither the unsecured creditors, nor the bondholders, could wait until August 18, 1936, eight months after the making of the order of the referee, without appealing from it and then institute a proceeding dealing with subject-matter, the title to which had passed irrevocably to the New York Trust Company as trustee under the trust indenture. We cannot see that either In re Central Funding Corporation (C.C.A.) 75 F.(2d) 256, or In re Mortgage Securities Corporation (C.C.A.) 75 F.(2d) 261, is applicable to

proceedings to bring into a reorganization property which had been held by the bankruptcy court to be no part of the assets of .the debtor and which no longer had any effect upon the latter's relations with its creditors.

For the foregoing reasons we think that the order of the court below should be affirmed.

Order affirmed.

CHASE, Circuit Judge, concurring.

MANTON, Circuit Judge (dissenting).

The National Public Service Corporation was adjudged a bankrupt July 8, 1932. It had issued, in 1928, $20,000,000 of secured gold debentures, due 1978, for which securities were pledged as collateral under an indenture with the New York Trust Company as trustee. At the time of its adjudication, the principal amount of these obligations was due with interest.· A claim was filed against the bankrupt estate for the full amount of these debentures, all of which are outstanding. The debentures were secured by 600,000 shares of common stock of the Seaboard Public Service Company, 60,114.3 shares of common stock of the Municipal Service Company, and 712,-411 shares of the common stock of the Jersey Central Power & Light Company. The first two companies' stock proved valueless and was disposed of by the indenture trustee at public auction August 27, 1936, for a nominal sum. The unpledged assets were reduced to cash and amounted to $111,000 distributable among general creditors whose claims had been allowed. These claims will aggregate approximately thirty million dollars minus the estimated value of the collateral held by the indenture trustee.

Prior to January 15, 1936, a representative suit was instituted by two of the debenture holders in the Supreme Court of the State of New York, asking for a distribution in specie of the Jersey Central· collateral. This action was opposed and dismissed.

On December 19, 1935, after a valuation proceeding, pursuant to section 57 (h) of the Bankruptcy Act, 30 Stat. 560 (11 U.S.C.A. § 93 (h), an order was entered fixing the value of the collateral at $6,767,904.50. The order recited that, since the value of the collateral was less than the obligations secured thereby, the interest of the bankrupt and the trustee in the collateral was terminated and "that all claim

and title in or with respect thereto by the bankrupt and its trustee should be abandoned"; and further "that the aggregate of all claims, principal and interest," upon the debentures should "be credited with the payment of and reduced by the amount of $6,767,904.50." This order was entered with the consent of all parties and no appeal was taken. The bankrupt was not a party to these proceedings.

On July 30, 1936, the indenture trustee, at the request of a protective committee representing some $14,700,000 of debentures, began advertising the Jersey Central stock for sale as of September 10, 1936. Appellee Public Service Corporation of New Jersey made a commitment to bid five million dollars for the Jersey Central stock collateral; this was subsequently raised to eight millions and expired November 27, 1936. The sale was adjourned and was later stayed by order of this court.

The petition for reorganization under section 77B of the Bankruptcy Act (48 Stat. 912, as amended, 11 U.S.C.A. § 207) was filed August 20, 1936, by creditors owning nearly one-third of the total issue of debentures. It contained all the requisite jurisdictional allegations for an involuntary creditors' petition and proposed a plan of reorganization which was later amended. Approximately 66 per cent. of the debenture holders have indicated their approval of the plan as amended. Appellees opposed the petition and challenged the jurisdiction of the court below, contending that the order of December 19, 1935, left none of the debtor's property to be reorganized and that therefore no jurisdiction existed. The appellee New York Trust Company, as indenture trustee, does not oppose the jurisdiction of the court but contends that the collateral remains in its control subject to all the terms of the indenture. The court concluded that it was without jurisdiction, rejected the application for approval of the plan, and denied a stay restraining the sale of the pledged collateral.

Subdivision (a) of section 77B (11 U.S.C.A. § 207 (a) gives to the reorganization court exclusive jurisdiction "of the debtor and its property wherever located." The debtor's interest in the pledge gives the court jurisdiction over the collateral pledged as security. In re Prudence-Bonds Corporation, 77 F.(2d) 328 (C.C.A. 2). Whereas before the enactment of section 77B the bankruptcy court had no power to restrain a valid sale of pledged collateral (Hiscock v. Varick Bank of N. Y., 206 U.S. 28, 27 S.Ct. 681, 51 L.Ed. 945), under this section the enforcement of foreclosure rights over the debtor's property may be enjoined. Centinental Illinois Nat. Bank & Trust Co. v. Chicago, Rock Island & Pac. R. Co., 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110; Radin v. Chemical Bank & Trust Co., 75 F.(2d) 262 (C.C.A.2). The debtor's interest required by section 77B may consist of an existing equity in the pledge. Continental Illinois Nat. Bank & Trust Co. v. Chicago, R. I. & P. R. Co., supra. But the absence of this equity either by a collapse in value or by the transfer of the equity of redemption does not negative jurisdiction or prevent a reorganization under section 77B. In re Central Funding Corporation, 75 F.(2d) 256, 261 (C.C.A.2); In re Mortgage Securities Corporation, 75 F.(2d) 261 (C.C.A.2).

In In re Central Funding Corporation supra, the objection was made to an order confirming a plan of reorganization that section 77B did not embrace property conveyed by the debtor to a trustee under a deed of trust in which the insolvent debtor had no equity; it was urged that section 77B was not intended as a method of liquidation. This court overruled the objection, saying: "The most frequent occasion for a reorganization is where only creditors' rights are to be adjusted and liquidation is to be slow enough to take advantage of market conditions obtaining over a long period."

There we said that it was immaterial whether the debtor had an equity of any value or not and that that the principal purpose of the bankruptcy laws was an equitable distribution of the debtor's property among its creditors. The same facts were involved in Re Mortgage Securities Corporation, supra, with the addition that long prior to the 77B proceedings the debtor had conveyed its equity of redemption to a third party. We held that it made no difference whether the debtor was "definitely eliminated" by a legal transfer or by such a "collapse in value that there is no reasonable expectation of revival."

The underlying rationale of these cases is that the bankruptcy court in reorganization proceedings has broad equitable powers to be exercised in the conservation of assets and the continuation of business; that section 77B looks to rehabilitation or a sound liquidation of assets; and that for these purposes the reorganization court must obtain complete control of property.

Section 77B is intended to affect property whether in the hands of the debtor or in the hands of lienholders. Grand Boulevard Inv. Co. v. Strauss, 78 F.(2d) 180 (C.C.A. 8). The disturbance of valid liens is contemplated, and the plan itself may modify or alter "the rights of creditors * * * secured or unsecured." Section 77B(b), 11 U.S.C.A. § 207(b). In view of the purpose of section 77B, the concept of "property" as a jurisdictional requirement has been liberally understood so as to offer a remedy to a class of creditors who wish to avoid the "dismemberment of their interest" despite the absence of a technical property interest in the debtor. In re Mortgage Securities Corporation, supra.

Certain interests have been held too remote as cases have arisen. In Re Lake Laundry, Inc., 79 F.(2d) 326, 102 A.L.R. 247 (C.C.A.2), certiorari denied Lake's Laundry v. Braun, 296 U.S. 622, 56 S. Ct. 144, 80 L.Ed. 442, the debtor's interest, that of a conditional vendee, was held not to constitute sufficient "property" to include the chattel within the plan of reorganization. Nor does the reservation of an option, not exercised, to redeem certificates issued against a mortgage, give rise to an adequate "property" interest in the mortgage itself. In re Prudence Bonds Corporation (President and Directors of Manhattan Co.), 79 F.(2d) 212 (C.C.A.2). See In re Tracy, 80 F.(2d) 9 (C.C.A.7), (proceeding under section 75 of the Bankruptcy Act, as amended, 11 U.S.C.A. § 203). In Re Adolf Gobel, Inc., 80 F.(2d) 849 (C.C.A.2), an injunction restraining an attachment proceeding against a subsidiary, substantially all of whose stock was held by the debtor, was denied. The subsidiary was solvent and was wholly independent of the debtor; and the "property" of the bankrupt was held not to be "directly affected." Similarly an injunction was refused in Re Nine North Church St., Inc., 82 F.(2d) 186 (C.C.A.2), to restrain an action against the guarantor of a mortgage debt, the sole reason for the injunction being that the debtor, a separate entity, was placed in reorganization proceedings. I do not deem these holdings controlling here and shall presently indicate my reasons for regarding In re Mortgage Securities Corporation, supra, as decisive.

The question revolves about the 57(h) proceedings and the order of December 19, 1935. It is necessary to review briefly the events which led up to the granting of that order. An application, dated December 27, 1934, was made by the owner of one $1,000 debenture on his own behalf and that of the owners of debentures in the principal sum of $150,000. The petition stated, inter alia, that, since nothing had been done by the trustee in bankruptcy or by the indenture trustee in two years following the filing of a claim by the debenture holders to adjust their secured claims they, the bondholders, were desirous of having the value of their collateral determined and the rights of the trustee in bankruptcy adjudged. They complained of being deprived of their right to realize upon the collateral. The petition further stated that the securities were worth approximately one-third of the amount of the secured obligations, and that in view of this fact the trustee in bankruptcy could have no possible interest in these securities; and the petition asked that the way be cleared for a proper disposition of the collateral without interference by the trustee in bankruptcy. It added that the court might provide, so as to fully protect the trustee, that any excess realized after the liquidation of the collateral for the benefit of the debenture holders should go to the trustee. It concluded by asking a valuation pursuant to section 57(h), that the valued amount be deducted from the secured claims and that, if the valuation was less than the amount of the lien, the trustee be directed to abandon any claim and interest to the collateral. On May 6, 1935, the referee denied the application. It was therein stated that the petition was opposed by 64 per cent. of the debenture holders who objected to the sale of the collateral at a sacrifice under the then existing market conditions and that it was also opposed by the trustee in bankruptcy, who asserted that something would remain from a liquidation of the collateral for distribution among the general creditors. December 19, 1935, however, the order in question was made valuing the collateral at approximately one-third of the amount of the outstanding obligations, crediting and reducing the secured claim by that amount, and providing for the termination and abandonment by the bankrupt and its trustee of all claims and interest in the collateral.

It is said that this order effectuated immediate part payment of the debt and that it differs in no respect from a foreclosure sale of the collateral; that every interest therein has therefore been fully administered, and that, since the exercise

of bankruptcy power under 77B presupposes an existing relationship between a debtor, its property and its creditors, no basis remains for the exercise of that power. I cannot agree.

Section 57(h), 11 U.S.C.A. § 93(h), governs the proof and allowance of claims; section 57(a), 11 U.S.C.A. § 93(a), requires secured creditors to set forth, along with a statement of the debt, a statement of what securities are held; by section 57 (e), 11 U.S.C.A. § 93(e), secured creditors are permitted to participate in bankruptcy proceedings as creditors only for the amount which the court finds to be due them in excess of the value of the securities; section 57(h) provides two means by which the value of the securities can be estimated and the amount of the secured claim correspondingly determined. The collateral may be converted into money according to the terms of the security agreement or its value may be fixed by "agreement, arbitration, compromise, or litigation, as the court may direct." It is further provided .that the amount of such value "shall be credited upon such claims." The purpose of section 57(h) therefore is to provide two general methods by which secured creditors are able to obtain a valuation of their security and prove for the balance as unsecured creditors. In re Grive, 153 F. 597 (D.C.D.Conn.). If liquidation is not effected in the way permitted by the security agreement, the secured creditors may apply to the court, obtain a valuation, and ascertain the amount of their unsecured claim. In re Salmon Weed & Co., 53 F.(2d) 335, 79 A.L.R. 379 (C.C.A.2).

A valuation pursuant to a court order is not intended to effectuate the immediate payment of the debt as would a sale of the collateral. If more is realized by a subsequent sale of the collateral than was estimated on its valuation, an adjustment of the unsecured claim must follow as long as the bankruptcy proceedings remain open. In re Davison, 179 F. 750 (D.C.D. N.Y.); In re Newland, Fed.Cas.No.10,171; Remington on Bankruptcy (3d Ed.) § 929. In the cited cases the collateral consisted of insurance policies, but we see no reason why a different principle should apply when the collateral consists of securities of fluctuating value.

The first part of the order of December 19, 1935, valuing the collateral, and providing that the valued amount be credited and deducted from the secured claim, followed almost verbatim the language of section 57(h). There is not the slightest indication that the order pro tanto intended that the valuation should be the equivalent of a liquidation by sale and should effect an immediate and definitive part satisfaction of the debt. We need not consider, therefore, whether the power resides in the bankruptcy court, in proceedings where the trustee and creditors alone are parties, to turn over collateral to secured creditors and upon a mere valuation to effect a definite satisfaction of the debt. If the order intended to accomplish this— if it intended to go beyond an ordinary 57 (h) order—it would have so stated in explicit terms. On the contrary, the order read that it was made "pursuant to the provisions of section 57H".

If the intent of the petitioners is material, the application of December 27, 1934, and the surrounding facts indicate clearly that the purpose of the petitioning creditors was to obtain control and possession of the collateral so that at a propitious time liquidation might take place without interference by the bankruptcy trustee. If the petitioner desired a final part satisfaction of the debt, we see no reason for the suggestion in the petition that the court might provide, in order to protect the trustee in bankruptcy, that any excess realized over the amount of the obligation should be turned over to him for the benefit of the general creditors. To carry out the purpose of gaining control of the collateral free from the trustee's interference, the petition requested that the trustee be ordered to abandon all claim and interest in the collateral. The secured creditors were entitled to this. The trustee's interest in incumbered property consists in the main of the possibility that something may be realized upon its liquidation over and above the amount of the lien. Whatever is so realized inures first of all to the benefit of the general creditors. If the property is incumbered with liens in excess of its value, the trustee may decline to accept it or may abandon it. Dudley v. Easton, 104 U.S. 99, 26 L.Ed. 668; McHenry v. La Societe Francaise, D'Epargnes, 95 U.S. 58, 24 L.Ed. 370; Remington on Bankruptcy (3d Ed.) § 1154. Indeed, it is his duty to abandon it (see In re Zehner, 193 F. 787 (D.C.D.La.), and he should not administer it except with the consent of the lienholders. See Powers v. Johnson, 71 F.(2d) 48,

55 (C.C.A.8), certiorari denied 293 U.S. 596, 55 S.Ct. 111, 79 L.Ed. 689.

The court in so ordering, therefore, did only what was proper under the circumstances and accorded to the secured creditors their rights. This abandonment by the trustee did not amount to a foreclosure or sale of the collateral. Lucas v. Sherry, 284 F. 965 (C.C.A.5), certiorari denied 261 U.S. 623, 43 S.Ct. 518, 67 L.Ed. 832. There is no support for the claim that it effected an immediate and irrevocable part satisfaction of the debt.

On abandonment by the trustee, the bankrupt may reassert whatever title or interest he had before bankruptcy. The "property" reverts to it. In re Webb, 54 F.(2d) 1065 (C.C.A.4); In re Wattley, 62 F.(2d) 828 (C.C.A.2); Remington on Bankruptcy (3d Ed.) § 1159. While the order of December 19, 1935, stated that any claim or interest in the bankrupt had terminated, the petition had not specifically asked for any such provision. This part of the order means no more than that, since the value of the collateral was so far below the amount of the lien, the bankrupt possessed no equity of any present or future value. The secured creditors therefore were in a position where they could freely exercise their rights over the collateral without interference of any sort. We need not decide whether in proceedings to which the bankrupt is not a party the court can, where no equity exists, cut off the rights of reverter and deprive the bankrupt of whatever technical "property" interest he may be entitled to, for I think it clear that the bankrupt retained one "property" interest at least—that of having the security applied to its debt by a realization and liquidation of the Jersey Central stock. No sale of the Jersey Central stock has yet taken place; the bankruptcy proceedings are still open and pending; 66 per cent. of the debenture holders have indicated their approval of the plan of reorganization and the debtor retains one "property" interest at least—that of having the security applied to its debt. Under In re Mortgage Securities Corporation, supra, this constitutes a sufficient "property" interest in the debtor to confer jurisdiction on the reorganization court. And the creditors are entitled through the instrumentality of 77B to join so as to prevent a dismemberment of their interest and to effect a better recovery than a current liquidation of the collateral might yield. Cf. In re Central Funding Corporation, supra.

I dissent.