MANUFACTURERS TRUST CO. v. KELBY et al.

No. 142.

Circuit Court of Appeals, Second Circuit.

Feb. 3, 1942.

David Barnett, of New York City, for appellant.

George C. Wildermuth, of Brooklyn, N. Y., for appellees.

Before L. HAND, CHASE, and C. E. CLARK, Circuit Judges.

L. HAND, Circuit Judge.

The Manufacturers Trust Company appeals from an order of the bankruptcy court, which modified an order of the referee, and denied its motion to dismiss objections filed to its account as mortgage trustee under a "series" of bonds of the debtor. The original proceeding was for a reörganization of the debtor—Prudence-Bonds Corporation—under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. After the Plan had been accepted, the reörganization trustees applied to the district court for an order directing the mortgage trustees of some eighteen pools of mortgages—of which the Manufacturers Trust Company was one—to account in the bankruptcy court for the management of their respective trusts. The district judge decided that he was without jurisdiction over such accountings and denied the order, but this court held otherwise in Central Hanover B. & T. Co. v. President and Directors of Manhattan Company, 2 Cir., 105 F.2d 130. The Manufacturers Trust Company then filed its account, to which a number of parties filed objections, the chief question being whether it had unlawfully surrendered some of the mortgages in the pool and had become accountable for the resulting loss. The objectors were (1) the reörganization trustees, (2) a new corporation which had taken over the assets of the debtor in accordance with the Plan, (3) a number of individual bondholders who were beneficiaries of the trust, and (4) an "advisory group," or committee acting for bondholders. The Trust Company moved before the referee, to whom the issues had been referred, to dismiss all the objections, first, because they were barred under the statute of limitations of New York, and second, because in any event only bondholders could object and of these only those who had held their bonds at the time of any wrong-

ful surrenders. The referee held that the new corporation, the reörganization trustees, and the "advisory group" had no standing to object, and that no bondholder had any standing who had not held his bonds at the time of the surrenders; but he also held that such individual bondholders as had so held their bonds could object in their own interest because they were not barred by the statute of limitations. On appeal to the judge, he affirmed the ruling of the referee as to the statute of limitations, but reversed him upon the other questions, and held that all the objections were valid and not barred. He therefore denied the motion of the Trust Company to dismiss the objections and for summary judgment. From his order the Trust Company appealed; and several mortgage trustees of other "series" have filed briefs as amici curiae.

■ The first and most important question is whether the assignee of one of the bonds of such a "series" has any standing to complain of a surrender of a part of the res made before the assignment. Nobody denies that the assignee is substituted for the assignor as to the assignor's equitable interest as beneficiary in all the mortgages that remain in the pool; the only question is whether the assignment also covers the assignor's interest in the right of action to compel the trustee to restore the fund. Being a question as to the effect of an assignment made in New York, the decisions in that state are authoritative, and we proceed to examine them.

The first at all relevant is Mittlemann v. President and Directors of Manhattan Co., 248 App.Div. 79, 289 N.Y.S. 2, affirmed 272 N.Y. 632, 5 N.E.2d 367, the doctrine of which was more specifically and authoritatively stated by the Court of Appeals in Weil v. President and Directors of Manhattan Co., 275 N.Y. 238, 9 N.E.2d 850, a sister case. All that the court actually held in that case was that the plaintiffs, who were "Schackno trustees," did not succeed to the rights of the bondholders against the defendant; but it went on to say—following In re Title & Mortgage Guarantee Co., 264 N.Y. 69, 190 N.E. 153, 96 A.L.R. 297—that the original mortgagee, which had by means of "participation certificates" made partial assignments of the mortgages, remained the owner and that the defendant, which was merely a custodian of the documents, was not like a trustee. In this there was not the least intimation as to whether a bondholder's right of action to restore the res is to be regarded as part of the res itself. In Morrison v. Barker, 164 Misc. 886, 299 N.Y. S. 921, certificate holders personally sought to recover from the directors of the same kind of depositary; and in Frank v. President and Directors of Manhattan Co., 168 Misc. 741, 5 N.Y.S.2d 937, they sought to charge the depositary itself. Only the second is relevant, and, while the plaintiffs were not indeed open to the objection that they were "Schackno trustees," they too were proceeding against the depositary who was not a trustee and had no standing as beneficiaries of a trust. In Hendry v. Title Guarantee & Trust Co., 255 App.Div. 497, 8 N.Y.S.2d 164, the defendant, a mortgagee, had made partial assignments of a single mortgage by means of "participation certificates." Later it released to the mortgagor an award in condemnation of a part of the res, for which the court held it liable to all but three of the certificate holders: two, whose certificates the defendant had issued after the release, and one, who had inherited hers from her sister also after the release. As to the first two, the case is clearly not in point; the defendant was itself the owner of their shares when the supposed wrong was committed; and the holders' only remedy was for issuing a misleading certificate. Cf. Brenner v. Title Guarantee & Trust Co., 276 N.Y. 230, 11 N.E.2d 890, 114 A.L.R. 1010. As to the third holder, her intestate having been a partial assignee of the bond and mortgage, the defendant, the mortgagee, was not a trustee (Restatement of Trusts § 16), and nothing decided could be relevant here. In addition, the case did not concern the implications to be imputed to the transfer inter vivos of one of a series of secured bonds, but apparently whether the cause of action should vest in the executor or the next of kin; and it is not entirely clear upon whom the right of action did devolve. The result in In re Mortgage Corp. (In re Title Guarantee & Trust Co.), 261 App.Div. 840, 25 N.Y.S.2d 999, followed from Weil v. President and Directors of Manhattan Co., supra, 275 N.Y. 238, 9 N.E.2d 850, and the decision adds nothing to what went before.

The Trust Company so particularly presses upon us Elkind v. Chase National Bank, 259 App.Div. 661, 20 N.Y.S.2d 213, affirmed 284 N.Y. 726, 31 N.E.2d 198, that we will set it out with some particularity.

Unlike those we have just mentioned, the case involved the rights of bondholders against a mortgage trustee. The mortgage covered all the mortgagor's assets except its "quick assets," and the plaintiff bondholders, suing in a representative action, sought to hold the trustee for neglect of its duties, and apparently also for affirmative breaches of duty, though the second is not quite clear. The trustee, a bank, had also been a general creditor of the mortgagor, and along with some other banks which were likewise creditors, secured the payment of its loan by means of the following scheme. The banks compelled the mortgagor to pay thirty per cent of their loans and to give them notes for the remainder; and then to organize a subsidiary selling company all of whose shares it pledged to them. The earnings of the selling company were large and the mortgagor used them to give the banks an unlawful preference. The trustee, being party to these devices, did not foreclose as it should have done, but allowed the "quick assets" to be depleted, thus eventually impairing the value of the bonds. The court dismissed this complaint upon the ground that the action was in tort and could not be prosecuted on behalf of all the bondholders because they had no common interest to protect; each had suffered an individual wrong while he held his bonds, the cause of action upon which did not pass to the person to whom he sold them. The trial judge had held otherwise, on the ground that the wrongs alleged had injured the mortgagor's "good-will," which was part of the mortgaged assets and of which the trustee had received a part—along with the other banks. The appellate division repudiated this reasoning only because none of the mortgaged assets had been misappropriated. This appears several times in the opinion. Thus, the trustee, as party to the scheme, had received no "part of the property * * * covered by the mortgage" (259 App.Div. page 664, 20 N.Y.S. 2d 217). A representative action to recover for such an injury was not maintainable, unlike "a suit to recover property that was subject to the lien of the mortgage" (259 App.Div. page 665, 20 N.Y.S. 2d 217). The "plaintiffs' right * * * arises from the alleged wrongful receipt by defendant of moneys * * * which are * * * not part of the mortgaged res," (259 App.Div. page 665, 20 N.Y.S.2d 218). Finally, "this is not an action to recover property that was part of the collateral and subject to the lien of the mortgage" (259 App.Div. page 667, 20 N.Y.S.2d 219). We do not think that Savings Bank of New London v. New York Trust Co., Sup., 27 N.Y.S.2d 963, adds anything to this. From the Elkind case it plainly appears—and the Trust Company does not dispute it—that if the trustee could there have been shown to have misappropriated any of the trust res, the right of action to compel restoration would have passed with an assignment of the bonds, being regarded as an incident or part of the res itself. But the argument is that if the trustee disposes of a part of the res without receiving anything in return, it is merely a wrong, an "injury" to the estate, and the remedy is personal to the beneficiaries and is not regarded as part of the res itself. It is quite true that the court presupposed that there were breaches whose remedies did not pass—perhaps the failure to foreclose was one—but there is no reason to assume that it meant to include breaches consisting of the actual unlawful surrender of the res, merely because the trustee received nothing in return, and we think the law is otherwise.

In principle any such distinction is à priori baseless, except in the practically imaginary case where the parties know of the surrender and make some concession for it in the price. When both know nothing of it and assume that the trustee's conduct has been lawful, to reserve the right to compel restoration works the most perfect injustice. The assignor has little motive to sue and probably could not recover if he did, having suffered no loss. Moreover, if he should, equity should on the plainest principles impress the recovery with a constructive trust in favor of the assignee who supposed he was buying the surrendered security for which the recovery is the substitute. Moreover, it must be remembered that misappropriated proceeds do not become ipso facto a part of the res; the right to follow them is a remedy and an alternative one at that. Restatement of Trusts § 202. Unless the beneficiary chooses to assert it the proceeds remain the trustee's and the beneficiary may sue him in personam. In such cases there would be no reason for saying that the remedy must change its character before it passes to the assignee; that is, that the option which attached to it in its origin must be cut off. If, however, we once admit that in those cases where there are proceeds to follow

654

the assignee ought to be allowed to sue the trustee in personam if he prefers not to follow them, there is no rational ground for stopping there; every consideration which should move the law to treat as a part of the res the alternative remedy when it is an alternative, should equally move it to treat the remedy as a part of the res when it is the only one available. For the truth is—whatever may be said as to other breaches—that whatever remedy the law gives for an actual depletion of the res—as against a mere injury to it—is a substitute for the very subject matter of the transfer itself; and that, unless it passes to the assignee, the transfer has been frustrated, as would very plainly appear if the trustee had parted with the whole res. That we should not so construe the intent of the parties as to foil their venture, is a cardinal principle of all interpretation. In the very few cases we have been able to find, the right of action appears to have passed to the assignee. McBurney v. Carson, 99 U.S. 567, 25 L.Ed. 378; Zimmerman v. Fraley, 70 Md. 560, 17 A. 560. See also Scott on Trusts, § 132.2.

 From what we have already said of the New York cases, it appears that they countenance no such unhappy result. We need not repeat what we have said as to Elkind v. Chase National Bank, supra, 259 App.Div. 661, 20 N.Y.S.2d 213; and the decisions heading from Mittlemann v. President and Directors of Manhattan Co. and Weil v. President and Directors of Manhattan Co., in which the wrong was committed by a depositary, not a trustee, are readily distinguishable. When a mortgagee, retaining the ownership in himself, makes partial assignments of one or more mortgages, he retains a power to defeat them by dealing directly with the mortgagor, although in so doing he commits a wrong. A depositary who aids him by surrendering the documents, is an accomplice to that wrong, for which it may be held liable; but the remedy does not result in restoring a res which it has surrendered, because it had no property to surrender beyond the documents themselves. We do not mean that it was impossible to hold that such a right of action also passes by the transfer of the "participation certificate"; but that is another question and we are not concerned with it here. Indeed, that it is a quite different question appears from the steps by which some of the New York courts arrived at the re-

sult they did as to the depositary, for they used the analogy of that doctrine of the law of contracts that the assignment of a contract does not convey rights of action for past breaches. Hanna v. Florence Iron Co., 222 N.Y. 290, 118 N.E. 629. It is of no moment that a trustee may also be sued in contract; he is as well the owner of property held for the beneficiary, and as such he is subject to liabilities quite separate from his contractual ones.

Finally, there can be no doubt that the instrument creating this "series" set up an "express trust"; it is exceptionally explicit, and is replete with language that admits of no other interpretation. A precisely similar deed was held to create a trust in President, etc., of Manhattan Co. v. Prudence Co., 266 N.Y. 202, 194 N.E. 408. The comments relied upon in Hazzard v. Chase National Bank, 159 Misc. 57, 287 N.Y.S. 541, affirmed 257 App.Div. 950, 14 N.Y.S.2d 147, do not mean that such trustees should not be held to such of their liabilities as such as they do not succeed in evading by stipulations in the trust instruments; on the contrary they were made in reprobation of the extent to which they do succeed in escaping those obligations, while continuing to hold themselves out as trustees. It would be a curious irony to make use of that opinion to excuse them even from the few responsibilities that remain.

 The next point is of the statute of limitations, but the answer follows from the view we take of the right of restitution. If, as we believe, that is a part of the res itself and passes as part of the security for the bonds, its assertion becomes merely an incident of the beneficiary's right to compel an accounting. The statute does not begin to run against that until the trustee has repudiated the trust to the beneficiary's knowledge, or himself invokes the aid of the court to pass his accounts. Ludington v. Thompson, 153 N.Y. 499, 47 N.E. 903.

 There remains only the question as to who has standing to object, a question of procedure depending not upon state law, but upon the Bankruptcy Act and the New Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Plainly the bondholders may appear on their own behalf except as they may have assigned their rights to the new corporation by the Plan. Against that possibility it will be best to

allow both them and the new corporation to appear, so that there can be no question that that party shall be before the court who is vested with the right. The "advisory group" is a committee, and a committee may appear for creditors "for all purposes of this section." § 77B(b). Finally, although we cannot quite see any reason for allowing the reörganization trustees to intervene, the matter was one for the decision of the district judge within the discretion vested in him by Rule 24(b) (2). The only practical considerations against their intervention are the danger of confusion arising from the presence of too many parties, and the possible increases in the allowances and costs. We cannot see why there should be any undue confusion, if the objectors combine in a single brief as they have upon this appeal, and the district court will no doubt see to it that no unnecessary legal services are rewarded.

It will of course be understood that we do not mean to indicate any opinion upon the merits. The Trust Company insists that the debtor itself restored the fund in all cases, even if it—the trustee—wrongfully surrendered to the debtor any of the mortgages. Whether and how far that may be an answer we leave to the trial.

Order affirmed.