**CLARKE v. CHASE NAT. BANK OF CITY OF NEW YORK.**

No. 282.

Circuit Court of Appeals, Second Circuit.

July 29, 1943.

See, also, 2 F.R.D. 94; Id., 45 F.Supp. 820.

Lewis M. Dabney, Jr., of New York City (William T. Holmes, of New York City, of counsel), for Stanley Clarke, Trustee of Associated Gas & Electric Co., plaintiff-appellant.

Milbank, Tweed & Hope, of New York City (Lawrence Bennett, A. Donald Mac-Kinnon, Einar B. Paust, and Eugene H. Gordon, all of New York City, of counsel), for Chase Nat. Bank of City of New York, defendant-appellee.

Before L. HAND, AUGUSTUS N. HAND and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

Associated Gas and Electric Company (herein called Ageco) filed its petiton for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., on January 10, 1940, and the plaintiff, Stanley Clarke, was appointed trustee by an order of the District Court dated October 16, 1940, which vested him with title to the property of the debtor, Ageco, and authorized him to collect all choses in action due the debtor. A later order under date of November 15, 1940, provided that he should have such additional rights as a receiver in equity would have if appointed by a court of the United States for the property of the debtor. Thereafter the trustee brought this suit against the defendant Chase Bank and filed its second amended complaint alleging five causes of action (stated as five counts) which the defendant moved to dismiss on the ground that they did not state claims upon which any relief could be granted, and as to the first and third counts, that the trustee lacked title and was without capacity to sue and that the court lacked jurisdiction. The motions were granted as to all five counts, but the defendant was given leave to amend the fifth count. An order dismissing the first, third and fifth counts was made by Judge Conger and a second order dismissing the second and fourth counts was made by Judge Caffey. From each order the plaintiff has appealed.

The first count alleged that in February, 1929, Ageco and the defendant's predecessor executed an indenture covering an issue of Ageco debentures due January 15, 1949, (herein called 1949 debentures); that Ageco covenanted therein not to mortgage or pledge any of its property, with certain exceptions, without ratably securing the 1949 debentures and also not to consolidate, merge or convey a substantial portion of its property without causing its successor to execute a supplemental indenture securing the observance of all the covenants and conditions of the original indenture. It further alleged that on June 12, 1928,

Ageco and the defendant executed another indenture covering an issue of its debentures due 1958 (called herein 1958 debentures) and containing negative covenants similar to those made by Ageco in the indenture covering the 1949 debentures. The first count further alleged that at the beginning of 1932 one Hopson, the dominant figure in the Associated Systems, devised a scheme, which was the basis of the claims set forth in the first and second counts, to defraud the Ageco debenture-holders; that in December, 1931, Ageco's assets consisted substantially of the stock and of over $670,-000,000 of indebtedness of its subsidiaries, Associated Utilities Investing Corporation and Associated Properties, Inc.; pursuant to Hopson's scheme to defraud, Associated Utilities Investing Corporation amended its charter, changing its name to Associated Gas and Electric Corporation (herein called Agecorp), and in March, 1932, Associated Properties Inc. was merged into Agecorp and the latter acquired the assets and assumed the liabilities of the former; about the same time a portion of Agecorp's indebtedness to Ageco was converted into stock of Agecorp which was issued to Ageco, and the balance of such indebtedness was subordinated to other obligations of Agecorp; that in July, 1932, the indebtedness of Agecorp to Ageco was extinguished by Agecorp's issuance of further Agecorp stock to Ageco; in April, 1932, Agecorp issued debentures known as the 8s of '40 which purported to be superior to the other obligations of Agecorp; the subordination of Agecorp's debt to Ageco and its conversion into Agecorp stock and the subsequent issuance of Agecorp's 8s of '40 constituted violations of the covenants of the indentures securing the 1949 and 1958 debentures of Ageco; the defendant, indenture trustee, failed to prevent Ageco from carrying out the above transactions and such failure constituted a breach of defendant's duties as such trustee. It was further alleged that in January, 1932, Ageco owed the defendant $4,000,000; about March 16, 1932, at a conference between Hopson, attorneys for Ageco, defendant's president, and attorneys for the defendant, it was agreed that the defendant would make no objection to the issue of Agecorp's 8% debentures of 1940; in March and May, 1932, the defendant received payment of the above indebtedness by Ageco of $4,000,000, nearly all of it from the proceeds of sale of the 8s of '40; defendant received payment when Ageco was insolv-

ent, or insolvency was imminent, and such condition was known to the defendant. A decree is asked that the defendant restore to the plaintiff for distribution among the debenture-holders of Ageco, the amount of their losses resulting from the breaches of trust.

The second count incorporated the allegations of the first and asked for a decree that the defendant restore the payments it received in March and May, 1932, upon the condition that it should be reinstated as a general creditor.

The third count incorporated the allegations of the first and second counts and claimed recovery for breaches of trust due to the so-called plan announced by Ageco on May 15, 1933, for its recapitalization, known as the "Recap Plan" under which holders of Ageco debentures might exchange their debentures (1) for one-half the principal amount of Agecorp debentures due in 1973, or (2) for an equal principal amount of income debentures of Ageco due in 1978, or (3) for an equal principal amount of sinking fund debentures of Ageco due in 1983. This count alleged that the issuance of the Agecorp option debentures was in violation of the negative covenants which the defendant as indenture trustee should have enforced. As in the first count a decree is asked that the defendant restore to the plaintiff for distribution among the debenture holders of Ageco the amount of their losses resulting from the foregoing breaches of trust.

The fourth count incorporated the allegations of the three former counts and alleged that on May 15, 1933, the defendant owned $4,249,000 of Ageco's debentures which it refused to exchange under the Recap Plan we have referred to but, along with other securities, transferred on August 28, 1934, to four of Ageco's wholly owned subsidiaries, receiving from Ageco's subsidiaries seurities of greater value, at the time knowing that Ageco was insolvent. A decree is asked that the defendant restore the preference realized from the dealings set forth in the fourth count.

The fifth count alleged that the defendant had been paid $40,000 as trustee's fees (which included counsel fees) and sought to recover these sums with interest because of the various derelictions of the indenture trustee.

To summarize: It is charged in the second amended complaint that the defendant, though knowing the insolvency of Ageco

and the risks that its debenture-holders were incurring, failed to prevent Ageco from violating the negative pledge covenants of the indenture, to the damage of the debenture-holders (first and third counts); that the defendant received payment of its own claims from Ageco, though knowing the latter was insolvent or in imminent danger of insolvency (second count); that the defendant made an unfair exchange of securities with Ageco's subsidiaries at a time when Ageco was insolvent (fourth count), and that by reason of its derelictions above set forth the defendant should not be permitted to retain the fees it has received for its services (fifth count).

■ An objection to the first and third counts which was argued in the court below and is reiterated here is that the plaintiff is not the real party in interest and cannot assert rights arising from the failure of the indenture trustee to prevent breaches of the negative covenants of the trust indentures. The argument is that these rights belong only to the debenture-holders, as the court below found to be the case, and are not vested in the plaintiff. There can be no doubt that if the debentures had been secured by property of the debtor and the pledgees had improperly diverted the security, the plaintiff would have been able to enforce the right of the debenture-holders to have it or its value restored even if the security was worth less than the face of the debentures and the debtor had no other assets. In Central Hanover B. & T. Co. v. President, etc., of M. Co., 105 F.2d 130, 132; In re Central Funding Corporation, 75 F.2d 256, and In re Mortgage Securities Corporation, 75 F.2d 261, 262, we held that a debtor can be reorganized though its equity has lost all value. As we said in In re Mortgage Securities Corporation, 75 F.2d at page 262, where the debtor had parted with its interest in mortgaged property: " * * * the shareholders, the unsecured creditors, and the secured, are each a separate order in one hierarchy; each has its proper unity; the section is intended as a remedy to allow all or some of these classes to establish a concourse which will avoid that dismemberment of their interests which other remedies occasion. Thus it can make no difference that the group of shareholders has been definitely eliminated, either by a legal transaction as here, or by such a collapse in value that there is no reasonable expectation of revival." See, to the same effect, our recent decision in Manufacturers Trust Co. v. Kelby, 125 F.2d 650, and McCandless v. Furland, 296 U.S. 140, 160, 56 S.Ct. 41, 80 L.Ed. 121.

■ But there is a real difference between the situation dealt with in the foregoing cases and the facts alleged in the first and third counts. In these counts the debenture-holders claim that the defendant-trustee, though knowing that Ageco was insolvent, failed to take the steps it might have taken to prevent Ageco from impairing the value of the rights of the debenture-holders. Assuming bad faith on the part of the indenture-trustee so that the exculpatory clause of the indentures providing that the defendant need not act unless requested to do so by 15% of the debenture-holders and furnished with indemnity would not bar the causes of action, yet we cannot see that the claims for breach of the covenants are any part of the property of the bankrupt or would affect the plan of reorganization. They at most would be a claim of the debenture-holders not derived from the bankrupt's estate but arising through the alleged tortious action of the indenture trustee. We have held that claims against a guarantor of the obligations of a debtor are not part of the debtor's property and do not have to be brought into a plan of reorganization. See In re Nine North Church Street Inc., 2 Cir., 82 F.2d 186, 187. Likewise in In re 1,775 Broadway Corporation, 79 F.2d 108, we excluded from a plan of reorganization claims of note-holders of the debtor for fraudulent misrepresentations by an indenture-trustee. See, also, In re National Public Service Corp., 2 Cir., 88 F.2d 19, where we held property that had already been applied to claims of creditors was not subject to reorganization. We cannot see how the claims asserted against the defendant in counts 1 and 3 affect the plan at all. Each creditor, including the debenture-holders, can prove the full amount of his claim, and only to the extent that a debenture-holder fails to satisfy it from the bankruptcy estate will he suffer a loss which he can assert against the defendant through its failure to enforce the negative covenants. The fundamental difficulty with the first and third causes of action is that they are personal to the debenture-holders and have no place in a plan of reorganization. As was said in In re Commonwealth Bond Corporation, 2 Cir., 77 F.2d 308, 309: "It is

quite true that we have recently several times decided that * * * the district court may in some circumstances control lienors who hold property of the debtor in their possession. In re Central Funding Corporation, [2 Cir.], 75 F.2d 256; In re Mortgage Securities Corporation, [2 Cir.], 75 F.2d 261; In re Prudence Bonds Corporation (Radin's Appeal) [2 Cir.], 75 F.2d 262. * * * But the power so exercised was necessarily founded upon the possibility of bringing the security, suits against which were enjoined, within a plan of reorganization. Stays must be ancillary to the main purpose of the proceeding and are not lawful when they cannot contribute to execution of the plan."

Moreover the trustee in bankruptcy has no title to the claims embraced in the first and third counts and is not the real party in interest by whom such claims should be asserted under Rule 17(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Elkind v. Chase National Bank, 259 App.Div. 661, 20 N.Y.S.2d 213, affirmed 284 N.Y. 726, 31 N.E.2d 198. Accordingly the order dismissing Counts First and Third should be affirmed.

■ The second and fourth causes of action stand on a somewhat different footing. The indentures refer to Chase throughout as a trustee and contain numerous exculpatory clauses quite superfluous unless a fiduciary relationship existed between Chase and the debenture-holders. Even though the absence of a res may make the word "trustee" inapposite, Chase was at least an agent equally obligated to refrain from competing with its principals, the debenture-holders. There was certainly a fiduciary relation to which the obligations generally applicable to trustees would apply. In re Union Real Estate Investment Co., 331 Pa. 569, at page 575, 1 A.2d 662; Rhinelander v. Farmers' Loan & Trust Co., 172 N.Y. 519, 530, 65 N.E. 499. Upon receipt of preferences which were, as to the debenture-holders, a breach of its duty, Chase became a trustee for their benefit. In the course of the reorganization it will be necessary to determine the relative participations of Chase as a general creditor under its loans and of the debenture-holders; or perhaps after the preference money has been applied to the debentures, Chase may be subrogated to the holders' claims and so participate as a debenture-holder rather than as a general creditor; or perhaps its behavior may be found to preclude either subrogation or participation as a general creditor. The determination of these questions and the proper disposition of this fund as among creditors will be a prerequisite to the preparation of a fair and equitable plan of reorganization. For this reason we believe that any funds recovered would be so far related to the proposed reorganization as to necessitate their inclusion within the "extended meaning of the debtor's property," Central Hanover B. & T. Co. v. President, etc., of M. Co., 2 Cir., 105 F.2d 130, 132, and to authorize the trustee to reduce the fund to possession and hold it for such disposition as may be found to be proper. Unlike the recoveries sought under the first and third causes of action, a recovery of the funds in question in the second and fourth counts will clearly reduce the claims provable by the debenture-holders. Accordingly the order dismissing counts two and four should be reversed.

■■ The fifth count seeks the recovery of compensation paid to Chase because it had been a faithless trustee and as such was not entitled to any fees. The court below dismissed this count and allowed the plaintiff to replead in order to allege a fraudulent or preferential conveyance. It seems evident that the only possible cause of action to recover the fees, which Ageco paid with full knowledge of all defaults, would be one based on the theory of a fraudulent conveyance, namely, that the payments were made by an insolvent of sums not earned because not allowable to a tortious trustee. The count does not show at what dates the payments were made, whether the corporation was insolvent at the time, or whether Chase had already been guilty of any misconduct. We think such a complaint was properly dismissed with leave to amend. Since no order appears to have been entered making the dismissal final, an appeal does not lie.

For the foregoing reasons the order in so far as it dismisses the first and third counts is affirmed, and in so far as it dismisses the second and fourth counts is reversed. The appeal from the order dismissing the fifth count is dismissed for lack of jurisdiction.

L. HAND, Circuit Judge (dissenting in part).

I need consider only the indenture of 1929, because that of 1928 is in all relevant particulars the same. Article VI, § 2, provides that, whenever the debtor shall

violate any of its promises the trustee may, and—when the right proportion of bond-holders ask it to do so—must, declare a default; § 3 provides that when properly indemnified it must "proceed to protect and enforce its rights and the rights of the holders"; § 4 provides that "all rights of action under this Indenture * * * may be enforced by the Trustee * * * and any such suit * * * instituted by the Trustee shall be brought in its name as Trustee." In the face of these provisions I do not see how it can be questioned that the trustee held some rights of action in trust for the bondholders; or that they were a "res." My brothers agree that it is irrele-vant whether the debtor retains any in-terest in the res; indeed, they quote from one of our decisions in which the debtor had actually conveyed away all its equity. In re Mortgage Securities Corp., 2 Cir., 75 F.2d 261. That means that, once the court gets jurisdiction of a reorganization, it will adjust the mutual rights of the debt-or's creditors as between themselves. If we assume—as I shall try to show that we must—that the trustee had some positive duty, as a trustee, to prevent the violation of the covenants in the indenture, the case is on all fours with those cited in my broth-ers' opinion, in which we have held that it is a proper part of a reorganization to com-pel a trustee to restore the fund to that amount which it would have had, had he not been derelict in his duties. On that theory the trustee should have prevented the debtor from siphoning its assets away from its creditors—the bondholders along with the other general creditors. In what way does that differ from allowing a debt-or, in violation of the mortgage, to sub-stitute improper collateral? What differ-ence can it make that the beneficiaries of the covenants here in question were only a part of those—the creditors at large—who were aggrieved by the debtor's con-duct? The others had not provided them-selves with a guardian over their interests, and have no one whom they can call to ac-count. Although the measure of the guard-ian's liability is that of his wards' losses, what bearing has it that there were others who have no claim to restoration? The loss was nevertheless of the debtor's assets;

the remedy will be in their restoration; I do not understand how that can be alien to a reorganization. There is nothing in common between such a recovery and a right of action against a trustee for de-ceit on the sale of bonds. In re 1775 Broadway Corp., 2 Cir., 79 F.2d 108. Or between such a recovery and an action against a guarantor of the debtor. In re Nine North Church Street, Inc., 2 Cir., 82 F.2d 186, 187.

As to the case against the trustee up-on the merits, I agree that ordinarily a trustee does not default in its duties by mere inaction; certainly not when it has protected itself by such covenants as these. Article VI, § 12 and Article IX, § 1, are in the standard pattern of immunity; I do not question that they protect a trustee in most cases; but there can be such open and brazen breaches of the obligor's duty that mere connivance becomes active con-cert. I do not say that a trustee is charged with surveillance of the debtor, but I do say that he may not strip himself of all his fiduciary duties after peppering a whole document with fiduciary verbiage. Com-plaisance after notice may bring upon him a just charge of "gross negligence" or "bad faith"; and that will serve. Restatement of Trusts, § 222(2); Comment (b); Scott on Trusts, § 222.3. See also § 125, N.Y. Decedent Estate Law, Consol. Laws, c. 13. The allegations of this complaint go far enough, I believe, to meet this confessedly vague description of a confessedly vague standard of residual duty. Article 26 alleg-es that the defendant was advised by its lawyers that a "prior variant," "differing only in non-essential details" from the debt-or's scheme of draining off its assets, was "illegal and that it was the duty of de-fendant as trustee to attempt to procure an injunction to prevent its accomplish-ment." That I think should answer on a motion like this. If the plaintiff can make good such allegations, I would hold the defendant liable in this proceeding for all losses which can be traced to its culpable indifference.

As to the fifth count, I am not clear that my brothers mean to say anything about the merits. If so, I do not join with them; I would merely dismiss the appeal.