## CENTRAL HANOVER BANK & TRUST CO. et al. v. PRESIDENT AND DIRECTORS OF MANHATTAN CO. et al.

### No. 319.

Circuit Court of Appeals, Second Circuit.

June 12, 1939.

Charles M. McCarthy, of New York City, for Prudence Bonds (new corporation).

Hugh L. M. Cole, of New York City, for Chase Nat. Bank.

Henry E. Kelley, of New York City, for Central Hanover Bank & Trust Co.

Samuel Silbiger, of Brooklyn, N. Y., for George E. Eddy.

J. M. Richardson Lyeth, of New York City, for Manhattan Bank.

Percival E. Jackson, of New York City, for Prudence Securities Advisory Group.

Before L. HAND, AUGUSTUS N. HAND, and PATTERSON, Circuit Judges.

L. HAND, Circuit Judge.

The order on appeal was in a reorganization proceeding in bankruptcy, and directed the trustees of some eighteen pools of mortgages severally to account for the conduct of their trusts. The first order required the trustees to account generally; but later the judge limited the scope of the accountings, and the appeal relates to the limitation alone. During the existence of the trusts the trustees surrendered some of the mortgages making up the pools to the debtor under circumstances which, as the bondholders assert, made them liable for a breach of trust: two of the trustees wish this litigation to be tried in the accountings; two others wish it kept out; some bondholders wish it kept out; other bondholders and a new corporation created as a successor to the debtor, wish it kept in. The district judge decided that he had no jurisdiction to entertain it.

The debtor had sold to the investing public great numbers of its bonds, guaranteed by an associated company—Prudence Company, Inc.—and divided into eighteen "series", the bonds in each series being secured by a separate pool of mortgages pledged to a trustee. The debtor had reserved power to withdraw mortgages from any pool and substitute others of equal value, and it did so in a number of instances with the consent of the trustees. These are the substitutions in controversy. Becoming embarrassed—insolvent as it turned out—the debtor filed a petition for reorganization under § 77B of the Bankruptcy Act, 11 U.S. C.A. § 207, and eventually put through a reorganization in the form of a separate "plan" for each pool, and a general "plan" for itself. Each pool "plan" provided that the trustee should transfer its pool to a new trustee—the same one for all pools—and that a newly created corporation should "service" the pools, as the debtor had done before. The other changes in the original agreements of pledge are not important for the purpose of this case. The "plan" for the debtor provided for the incorporation of the new company (the shares of which were to be put in a voting trust, the trust certificates being distributed to the bondholders), for a "Class B" stock, to be offered to general creditors and shareholders at a price, and for the new company's guaranty of the bonds. There was no equity in any of the pools, and the debtor had no free assets; nor did the new company, except for its right to "service" the bonds, and for any new cash that might be subscribed. When the substitutions were discovered, some of the bondholders announced that they meant to sue the trustees for the resulting losses, and moved to amend the order to exclude their claims. The new company, two of the trustees, and a number of bondholders, appeal from the order granting this motion.

[1-3] We held in Re Prudence Bonds Corporation, 2 Cir., 79 F.2d 205, that the debtor's reorganization by separate "plans" was lawful; and if the putative breaches of trust had been those of the trustees alone, without participation by the debtor, their liability to restore the res would certainly have been a proper item in their accountings, and plainly within the jurisdiction of the bankruptcy court. The recoveries will in any event be part of the security, and they would have inured to the debtor's interest. But the appellees argue that, since the debtor was not only a participant in, but the instigator of, any such breaches of trust, the recoveries will not be part of its "property", but merely indemnity to the bondholders; and that, being personal to them, they cannot be the subject of reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. If it were true that a plan of reorganization could not include, or deal with, any property in which the debtor did not continue to have an interest upon petition filed, there would be force in this argument; but even in ordinary bankruptcies that is not true. The trustee is vested, with property which the bankrupt has fraudulently conveyed, § 70a(4), 11 U.S.C.A. § 110(a)(4), or which he has transferred preferentially, § 60b, 11 U.S.C.A. § 96(b), and with all the powers of a judgment creditor, § 70c. In the first two of these situations the bankrupt has always parted with all his interest in the property. A reorganization trustee, or a "debtor in possession", has all the power of an ordinary trustee, § 186, 11 U.S.C.A. § 586, and of a receiver in equity, § 187, 11 U.S.C.A. § 587; and, although strictly, such a receiver has no better title than the defendant whose possession he

takes over, this limitation has been very materially extended; there are occasions when he may represent creditors when the defendant would have had no standing. McCandless v. Furlaud, 296 U.S. 140, 56 S. Ct. 41, 80 L.Ed. 121; Pittsburgh Carbon Co. v. McMillin, 119 N.Y. 46, 23 N.E. 530, 7 L.R.A. 46.

 The question here is whether the rights of these bondholders to compel a restoration of the res is within this extended meaning of the debtor's property. We think it is. In all reörganizations, the debtor must be insolvent in one sense or the other, § 130(1), 11 U.S.C.A. § 530(1). If its assets are not enough to pay its unsecured creditors, its shareholders must be eliminated, and in the ordinary sense they are the corporation. If the deficiency extends even to the secured creditors (there being no free assets, or substantially none) the only property to be reörganized is the security. Nevertheless, we have held that the debtor can be reorganized though its equity has lost all value (In re Central Funding Corp., 2 Cir., 75 F.2d 256) and even though it has conveyed the equity away. In re Mortgage Securities Corp., 2 Cir., 75 F.2d 261. In the second case we said that a reörganization is a rearrangement of the córporation's assets among its creditors by groups, which together constitute a hierarchy of mutually independent interests. If a junior group must be eliminated, it is of no moment to those senior to it, whether there are no assets properly apportionable to it, or whether it has disabled itself from claiming its share. From this view it follows that any remedy to restore the waste of assets apportionable to one group, is unaffected by the conduct of a junior group—for example, the shareholders in the case at bar—which may debar it from availing itself of the remedy. It would be indeed a strange anomaly to hold that the district court here had jurisdiction in favor of the bondholders of a litigation to restore assets wasted by trustees, when they dissipated them for their own profit, but not when they surrendered them to the debtor. Only in case the debtor was authorized to act for the bondholders could that be true, and it was not so authorized, for it and the bondholders were in incommunicable compartments. We conclude therefore that the district court has jurisdiction over the claims, and may, if it sees fit, include them in the accountings. It does not follow that it will prove more convenient to do so. The judge did not pass on that question. When the case goes back, he will be free to choose that forum which he thinks will best serve the interests of all, and it is unlikely that there will be any ground for disturbing his choice.

Our decision in In re 1775 Broadway Corporation, 2 Cir., 79 F.2d 108, was of quite another kind; the claims against the trustee which we eliminated were for its fraud in selling the bonds. These the bondholders did not assert as beneficiaries of the trust, but as defrauded buyers. They had nothing to do with the res, and would not restore it; they had nothing to do with anything that had ever been the debtor's property, or with the distribution of any part of it. As for Weil v. President and Directors of Manhattan Company, 275 N.Y. 238, 9 N. E.2d 850, it dealt only with the power of trustees appointed under a New York statute.

Order reversed; cause remanded.