## In re SOLAR MANUFACTURING CORPORATION.

### No. 10743.

United States Court of Appeals, Third Circuit.

Argued Oct. 13, 1952.

Decided Dec. 3, 1952.

Irving Riker, Newark, N. J., and Riker, Emery & Danzig, Newark, N. J., for appellant (George H. Callahan, Newark, N. J., on the brief).

Samuel M. Coombs, Jr., Jersey City, N. J., for trustee of debtor (Milton A. Dauber, Jersey City, N. J., on the brief).

George Zolotar, New York City, for Securities and Exchange Commission (Roger S. Foster, General Counsel, David Ferber, Special Counsel, Securities and Exchange Commission, Washington, D. C., Ezra Weiss, New York City, on the brief).

Before GOODRICH, McLAUGHLIN and STALEY, Circuit Judges.

McLAUGHLIN, Circuit Judge.

In this Chapter X proceeding the district court denied appellant's motions to dismiss counterclaims of appellee, the sole remaining reorganization trustee, to an account and proofs of claim, both filed by appellant.

On December 14, 1948, the debtor, Solar Manufacturing Corporation, filed a voluntary petition under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., in the United States District Court for the District of New Jersey. Originally two trustees were appointed. They both served until June 28, 1951, when for reasons of economy one was eliminated. At this time most of the debtor's assets have been sold and dividends approximating 25% of claims have been paid or held for distribution on unsecured claims.

On August 1, 1945, the debtor entered into an indenture agreement with appellant, The Marine Midland Trust Company

of New York, as trustee, pursuant to which 5% debenture bonds in the face amount of $1,500,000 were issued. $1,450,000 of these bonds remain outstanding. On May 2, 1947, appellant loaned the debtor $650,000, with the loan evidenced by the debtor's unsecured note. Between January 28, 1948, and June 30, 1948, the debtor repaid $275,000 of this loan. On October 27, 1948, the date on which the debtor filed a Chapter XI proceeding, 11 U.S.C.A. § 701 et seq. (later dismissed) in the United States District Court for the Southern District of New York, appellant, as a set-off against the amount due on the note, appropriated the $45,078 balance which the debtor had in its general bank account with appellant. In June, 1948, the debtor sold its Chicago plant for $450,000 and deposited that sum in its general bank account with appellant. Between September 3, 1947 and October 21, 1948, appellant financed $1,505,558 of debtor's accounts receivable, on which it allegedly made a profit of $7,963.

On March 11, 1949, appellant filed a proof of claim for about $5,000 for services and expenses as indenture trustee. On March 31, 1949, it filed another claim for $354,340 due on the note and for $13,985 based on alleged breaches of warranty and representations made on the sale to it of debtor's accounts receivable.

Appellant resigned as indenture trustee effective March 2, 1949. Upon petition of a committee representing debenture holders, the district court by order of October 13, 1949, required it to file an account as such trustee. That account was filed December 1, 1949. Thereafter the trustees filed their objection to appellant's claims, an answer and counterclaim to the account, and an answer and counterclaim to the claims. In substance the trustees alleged:

(1) That appellant accepted the $275,000 payments on the note and appropriated the $45,078 bank account while debtor was insolvent to appellant's knowledge, in violation of Section 67 of the Bankruptcy Act, 11 U.S.C.A. § 107, New Jersey Revised Statutes 14:14–2, N.J.S.A., and Section 15 of the Stock Corporation Law of New York, McKinney's Consol. Laws, c. 59.

(2) That appellant was derelict in its duties as indenture trustee in failing to earmark the $450,000 received from the sale of debtor's Chicago plant for the benefit of debenture holders, as provided by Article Five, Section 14 of the trust indenture.

(3) That appellant's financing of debtor's accounts receivable constituted loans secured by a pledge in violation of the negative pledge clause of Article Five, Section 12(b) of the trust indenture.

The answer and counterclaim to appellant's account prayed that appellant, as indenture trustee, account and be surcharged for $320,681 for the alleged preferences obtained on the repayment of the note; for the $450,000 which Marine allowed the debtor to deposit in its general bank account, and for the $7,963 profits it realized on financing the accounts receivable. Similar relief was sought in the answer and counterclaim to the claims of Marine. All of the above grounds were asserted by way of defenses to the claims and objections to the account. Appellant moved to dismiss the counterclaims and the court referred the motions to a referee as special master for hearings. The master held that the determination of the motions should await a "full and complete trial" of the issues. Appellant objected to the master's report. The district court, 102 F.Supp. 859, in reviewing the report, upheld the denial of appellant's motions and concluded that it had summary jurisdiction to determine the issues raised by the counterclaims. This appeal followed.

The first question which must be resolved is whether the bankruptcy court has summary jurisdiction over the subject matter of the counterclaims based on the alleged preferential payments to Marine of $275,000 on the note and the $45,078 bank balance which Marine appropriated.

Prior to Alexander v. Hillman, 1935, 296 U.S. 222, 56 S.Ct. 204, 80 L.Ed. 192, the pertinent law generally was that although a bankruptcy court could consider defenses to claims filed against the bankrupt estate and was empowered to set off any claims of the estate against the claimant up to the amount of the claim, it was without jurisdiction to render an affirmative judgment

against the claimant, absent the latter's consent to jurisdiction.[1] In the Hillman opinion the Supreme Court held that former officers of a corporation in receivership who had filed claims with the equity receiver, but who had not been served with process, subjected themselves to the jurisdiction of the district court for the purposes of counterclaims based on their alleged misappropriations. The court noted that since the subject matter of the counterclaims, like the claims, was cognizable in equity the district court had jurisdiction to grant affirmative relief.

The reasoning of Hillman was thereafter applied to bankruptcy cases. In Florance v. Kresge, 4 Cir., 1938, 93 F.2d 784, it was decided that an unsecured creditor who had filed a proof of claim and a petition of intervention submitted himself to the jurisdiction of the court for purposes of a counterclaim which arose out of a contract between claimant and bankrupt and was asserted by the receivers and trustee. The court did not characterize the counterclaim as either equitable or legal, although it seems to have been the latter. The Fourth Circuit in Columbia Foundry Co. v. Lochner, 1950, 179 F.2d 630, 14 A.L.R.2d 1349, held that a corporation which had filed a proof of claim based on goods sold and delivered and had voted at the first meeting of creditors subjected itself to the trustee's counterclaim for a breach of warranty. There also the counterclaim was legal in character.

The facts of In re Nathan, D.C.S.D. Cal.1951, 98 F.Supp. 686, are quite similar to those before us. That matter involved a bankruptcy proceeding in which a Delaware corporation filed a claim for $13,000 based on promissory notes given by the bankrupt. The trustee counterclaimed for $54,000, alleging that claimant had received

that amount in preferences. Claimant applied for and was granted permission by the referee to withdraw its claim. The propriety of that order was appealed. The district court concluded that whether the claim could be withdrawn depended upon its jurisdiction to entertain the counterclaim. It held that under a logical extension of the Hillman rule it possessed such jurisdiction for two reasons: First: the bankruptcy court clearly had jurisdiction to hear defenses to the claim and to determine whether there were any set-offs. Therefore, even if that court had no jurisdiction over the *counterclaim*, a dismissal of the *claim* would be improper under Rule 41(a)(2) of the Federal Rules of Civil Procedure, 28 U.S.C., since the counterclaim would not then remain pending for independent adjudication—the prerequisite for withdrawal under that rule. An adjudication of the defenses and set-off to the claim would be res judicata in a plenary suit on the counterclaim. Thus the legal result of allowing a plenary suit on the counterclaim would be the same as if consent to summary jurisdiction had been given. Second: a fundamental purpose of the Bankruptcy Act is to effect a quick and summary disposal of questions arising in the progress of the case. The court pointed out that those considerations of reason and policy which were strong factors in the Hillman decision were equally applicable in the Nathan case. It held that implied consent to the jurisdiction of the Bankruptcy Court had been given by the creditor when it filed its claim; that no substantial right of the creditor was thereby impinged and that the result would be to effectually speed up the final settlement and distribution of the bankrupt estate in accordance with one of the distinct purposes of the Bankruptcy Act.[2]

1. Bardes v. First Nat. Bank of Hawarden, Bank, 1900, 178 U.S. 524, 20 S.Ct. 1000, 44 L.Ed. 1175; In re Carl Dernburg & Son, Inc., 2 Cir., 1924, 5 F.2d 37; Fitch v. Richardson, 1 Cir., 1906, 147 F. 197; In re Patterson-MacDonald Shipbuilding Co., D.C.W.D.Wash.1922, 284 F. 281.
2. Collier on Bankruptcy (Vol. 4, pp. 788–90) is very much in accord with this thought. As is there said:

"In Florance v. Kresge, however, the court held that the filing of an unsecured claim amounted to a submission to the court's jurisdiction so as to permit an affirmative judgment upon a proper counterclaim asserted by the trustee and receivers. In the light of expeditious administration of bankrupt estates, and an avoidance of multiplicity of litigation, this decision has much to recommend it. It

In Hillman, Kresge, Lochner and Nathan, as in this appeal, the subject matter of the counterclaim arose out of the same transaction as the claim. This is important because in those circumstances, as we have above indicated, the trustee may have a summary adjudication of the issues upon which his counterclaim depends by raising these issues in his answer to the claim. Appellant offers no reason for compelling the trustee to institute a plenary action in order to obtain affirmative relief where, as here, the issues adjudicated as defenses to the claim would be res judicata in the plenary suit.

■ The claims in Hillman were, in large part, for salaries, counsel fees and moneys advanced. The receiver counterclaimed, alleging that the claimants had entered into the transactions out of which the claims arose in bad faith and in violation of their duties as fiduciaries. The receiver argued that an adjudication of the claims could not be made without a consideration of the counterclaim. In the Kresge case the claimant filed proofs of claim for money due him under a contract; the counterclaims asserted by the trustee and receivers arose out of the same contract. The claim in Lochner was based on castings sold and delivered to the bankrupt; the counterclaim alleged that the castings possessed latent defects and it sought an affirmative judgment to recover damages resulting from their use. The Nathan claim was based on money due on a promissory note executed by the bankrupt one month prior to bankruptcy; the counterclaims sought a return of preferences arising out of that transaction. We are in accord with the Nathan opinion that the Hillman rule should be extended to cover situations like the one before us. We hold that Marine subjected itself to the court's summary jurisdiction respecting the counterclaims when it filed its account and proofs of claim.[3] In view of this conclusion there is no occasion for discussion of whether under the New Jersey law, N.J.R.S. 14:14-2, N.J.S.A., an action to recover the alleged preferences would be legal or equitable in nature.

■ The second point raised by this appeal questions the right of the reorganization trustee to recover from appellant the Chicago proceeds and the profits from the financing of the accounts receivable. The trustee's claims in connection with those items are filed as counterclaims to appellant's account and to its proofs of claim. The latter are for fees which appellant seeks as indenture trustee and for breaches of warranty arising out of the accounts receivable transactions. We think it plain that the counterclaims stem directly from those same sources. Upon petition by a committee representing various debenture holders the district court ordered appellant

would further serve to reduce the operation of the 'absurdity of making A pay B when B owes A.' One who files a proof of claim should be held to acquiesce in the adjudication of any proper set-off or counterclaim even to the extent of a judgment thereon, since as pointed out in the Kresge case, the claimant puts himself in a position, should his interests warrant, to challenge the receiver's or trustee's acts and the demands of others claiming as creditors. He should not be permitted to claim the benefits of such a position, and yet maintain a favored advantage as against the trustee or receiver, compelling that officer to resort to a plenary action to collect on a claim that is a proper subject of set-off or counterclaim."

3. As to the set-off by appellant of the debtor's bank balance against its loan to the debtor, the decision in Dudley v. Mealey, 2 Cir., 1945, 147 F.2d 268, certiorari denied 325 U.S. 873, 65 S.Ct. 1415, 89 L.Ed. 1991, is in point. There a bank was both indenture trustee of a series of debtor's bonds and the holder of certain gold bonds issued by the debtor. It was also the depositary of debtor's general bank account. When a receiver in foreclosure was appointed to take charge of debtor's hotel (its principal asset), the bank set off debtor's bank balance against the money due on the gold bonds. The reorganization trustee challenged the set-off but later entered into a compromise with the bank. A $1,000 bondholder of the series of which the bank was indenture trustee objected. On appeal the bondholder's position was sustained, with the court holding that the bank, as fiduciary, could not prefer itself to other general creditors.

to file its account as indenture trustee. Appellant did so without objecting. The accounting was presumably called for under Section 212 of the Bankruptcy Act, 11 U.S.C.A. § 612,[4] although it could have been directed under the bankruptcy court's inherent powers.[5] In either instance, since the Bankruptcy Act does not otherwise provide, it must be governed by the law of trusts generally applicable to accountings, and the trustee may be surcharged for his derelictions.

■ Appellant argues that the causes of action arising out of the Chicago proceeds and the accounts receivable are personal to the debenture holders and cannot be asserted by the reorganization trustee. We are satisfied that this proposition is erroneous. The action against appellant is quasi in rem for the benefit of the trust. It is for the restoration of trust funds. It calls for an adjudication that appellant violated its duty as indenture trustee. It bears the closest possible relationship to appellant's account. By that account appellant, acquiescing in the court's order that one should be filed, and seeking to be relieved of all further responsibility under the trust agreement, calls upon the court not just to examine its account but to determine whether or not it has performed its obligations under the agreement. That being so, the reorganization trustee is a proper person to press these claims against appellant. Central Hanover Bank and Trust Co. v. President, 2 Cir., 1939, 105 F.2d 130; Brooklyn Trust Co. v. Kelby, 2 Cir., 1943, 134 F.2d 105, certiorari denied, 1943, 319 U.S. 767, 63 S. Ct. 1330, 87 L.Ed. 1717.[6]

■ Appellant urges that under the terms of the indenture it was not required to compel the segregation of the Chicago

---

4. Section 612.

"The judge may examine and disregard any provision of a deposit agreement, proxy, power or warrant of attorney, trust mortgage, trust indenture, or deed of trust, or committee or other authorization, by the terms of which an agent, attorney, indenture trustee, or committee purports to represent any creditor or stockholder, may enforce an accounting thereunder, may restrain the exercise of any power which he finds to be unfair or not consistent with public policy and may limit any claim or stock acquired by such person or committee in contemplation or in the course of the proceeding under this chapter to the actual consideration paid therefor."

5. See Brooklyn Trust Co. v. Kelby, 2 Cir. 1943, 134 F.2d 105, certiorari denied 319 U.S. 767, 63 S.Ct. 1330, 87 L.Ed. 1717, where the court noted that it had inherent power to order an accounting by an indenture trustee, even absent the statutory authority found in Section 77B, sub. b(10), a predecessor of Section 212.

6. Appellant relies heavily on Clarke v. Chase National Bank, 2 Cir., 1943, 137 F. 2d 797, where the reorganization trustee brought suit, on five causes of action, against the indenture trustee, which, like appellant, was also a creditor of the debtor. The second and fourth counts charged defendant with misconduct in preferring itself, as creditor, to its cestuis under the indenture. The first and third counts charged that defendant by its inaction permitted the debtor to siphon off assets of the estate in violation of the indenture. The district court had dismissed all five counts, from which order of dismissal the reorganization trustee prosecuted an appeal. In reinstating the second and fourth counts but affirming the dismissal of the first and third, the court stated that the latter two were personal to the debenture holders and could not be asserted by the reorganization trustee. The fifth count, seeking recovery of trustee's fees paid to defendant, was dismissed for jurisdictional grounds not here pertinent.

While the counterclaims based on the Chicago proceeds are similar in many respects to the first and third causes of action in Clarke, the instant problem differs from that case in that the Solar reorganization trustee asserts his causes of action as counterclaims to an accounting and proofs of claim for trustees' fees, whereas in Clarke there apparently was no accounting nor proofs of claim relating to the same subject matter as the reorganization trustee's cause of action. This distinction is analogous to the distinction, made above, between original suits to recover preferences, which must be plenary, and counterclaims to recover preferences, which may be summary. In both instances the claimant subjects himself to the jurisdiction of the court for purposes of counterclaims relating to and a part of the subject matter of the claim.

proceeds until May first of the year following the sale of the Chicago plant, on which date it was no longer indenture trustee. That argument is out of place in the current status of this dispute. The allegations of the counterclaims are sufficiently broad to charge derelictions which may not be answered, as is claimed, by a reading of that section of the indenture which is reprinted in appellant's brief,[7] and on this appeal, as appellant admits, we must assume that appellee's allegations in its counterclaims are true. There is no question before us as to the merits of the counterclaims.

Appellant states with respect to the accounts receivable transactions that at most they were a violation of fiduciary duty with no right of action arising in the reorganization trustee. The Clarke decision itself, although it did not have to do with an accounting or counterclaims, recognizes the indenture trustee's liability to the reorganization trustee where the former has profited directly from its breach of trust. We are not at all persuaded by appellant's suggestion that the opinions in Brooklyn Trust Co. v. Keiby, supra, Clarke v. Chase National Bank, supra, Dudley v. Mealey, supra, and Dabney v. Chase National Bank, 2 Cir., 1952, 196 F.2d 668, which are relied upon by appellee, are not apposite as they dealt with "true" reorganizations and not liquidation, as in Solar.

Finally, appellant asserts that the counterclaims are not maintainable because, even if collected, the general unsecured creditors would not benefit. This is founded on the theory that should the reorganization trustee obtain the $450,000 for the deben-

ture holders they are still entitled to put in their claim for the whole $1,450,000 and will share with the general unsecured creditors as though they had not received the $450,000. Whether or not appellant's position is correct, it does not follow that the reorganization trustee is the wrong person to prosecute these claims. As we have already stated, the counterclaims were asserted against appellant's account as well as against its claims. Section 212 of the Bankruptcy Act, supra, Note 4, indicates that it was the intention of Congress to give the bankruptcy court greater powers of supervision over that sort of account than appellant is willing to concede. The legislative history of the Chandler Act itself shows that Congress was determined that the trustee protect the interests of investors as well as those of general unsecured creditors.[8] We agree with appellee that once jurisdiction attaches it is of minor importance whether the trustee, the substituted indenture trustee or the cestuis raises the question of the alleged breach of trust. In the particular circumstances of the case at bar it is well to remember that the trustee's action against appellant for breach of its fiduciary obligation was the outcome of two factors: First, the effort of the debenture holders' committee which resulted in the district court requiring appellant to account and second, of the later objections (coupled with a demand for surcharge) by debenture holders to the account after it had been filed.

The order of the district court will be affirmed.

7. The indenture was not printed in the appendices submitted by the parties.

8. II. Report #1409, 75th Cong. 1st Sess. (1937) at p. 43 states:
"It would be idle to provide that protective measures be adopted without likewise providing the means whereby such protection can be afforded. It would be futile to attempt to return these bankrupt estates to their real owners without providing the mechanism whereby the real owners could come into possession and power. There must be power and responsibility in the hands of a qualified representative of investors. Otherwise disorganization may result. Investors must be afforded a 'focal point' for organization. Such a device as the independent trustee furnishes them with one in the cases big enough to possess an appreciable investor interest * * *."